IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

Kristen Poshard,

       Plaintiff,

vs.

Madison County, Illinois; and, in their
individual capacities, Philip Chapman,
Kurtis Prenzler, and Douglas Hulme,

       Defendants.

C.A. No. 3:19-cv-00324

**JURY TRIAL DEMANDED**

## COMPLAINT

1.    This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Equal Pay Act, the Illinois Equal Pay Act, and 42 U.S.C. § 1983. Plaintiff, Kristen Poshard is a former Madison County employee. Plaintiff makes claims of sex discrimination in the form of wage discrimination and sexual harassment. Plaintiff also makes claims for retaliation for opposing and reporting sexual harassment.

### Parties

2.    Plaintiff is a former employee of Madison County, Illinois.

3.    Defendant Philip Chapman is a member of the Madison County Board.

4.    Defendant Kurtis Prenzler is a Chairman and a member of the Madison County Board.

5.    Defendant Douglas Hulme is the Madison County Administrator.

6.    Defendant Madison County, Illinois is a unit of local government within the State of Illinois.

1

**Jurisdiction and Venue**

7.    This court has jurisdiction over plaintiff's federal claims based on 28 U.S.C. 1331 and 1343, 42 U.S.C. § 2000e-(f)(3) and 29 U.S.C. § 206(d). This court has supplemental jurisdiction over plaintiff's claim under the Illinois Equal Pay Act.

8.    Plaintiff's causes of action arise out of conduct in Madison County, Illinois, so venue is proper.

**Administrative Facts**

9.    On or about October 20, 2017 and January 16, 2018, plaintiff timely filed Charges of Discrimination ("Charges") with the EEOC alleging continuing actions of sex discrimination and retaliation. Copies of the Charges are attached and incorporated as Exhibits 1 and 2.

10.    In 2016 through 2018, Madison County was an employer under Title VII of the Civil Rights Act in that it was a unit of local government and it had 15 or more employees.

11.    On or about December 21, 2018, the United States Department of Justice signed a Notice of Right to Sue on the October 2017 Charge. Exhibit 3.  On March 14, 2019, the EEOC issued a Notice of Right to Sue on the January 2018 Charge. Exhibit 4.

12.    Plaintiff is filing this lawsuit within 90 days of receipt of these Notices of Right to Sue.

## Facts

### The County hires plaintiff, paying her less than her male predecessor

13.     On or about December 16, 2016, Madison County hired plaintiff, who is female, as Chief Deputy Administrator for Community Development, one of the County's departments.

14.     Plaintiff took over the duties of Frank Miles who resigned in early December 2016. Miles is male.

15.     The County paid plaintiff a salary of $92,000.00 per year.

16.     The County was paying Miles a salary of $103,000.00 per year.

17.     Plaintiff took over Miles's job. So plaintiff and Miles performed jobs that encompassed the same common core of tasks. In fact, the County later gave plaintiff additional duties but no additional pay.

### Philip Chapman harasses plaintiff

18.     From time to time, as part of her duties, plaintiff communicated directly with members of the County Board, including Philip Chapman.

19.     In mid-May 2017, Chapman began contacting plaintiff by phone or text requesting a confidential meeting outside the County's offices.

20.     Believing the meeting would relate to County business, plaintiff agreed to meet Chapman on or about May 24, 2018 at the Troy, Illinois Cracker Barrel.

21.     During the Cracker Barrel meeting, Chapman said or did the following. These acts and statements were unwelcome by and offensive to plaintiff.

a.  When plaintiff arrived, Chapman hugged plaintiff. He later—while still at Cracker Barrel—said that he had become excited and tingly while hugging her because he could feel her areola through her shirt.

b.  When both plaintiff and Chapman were seated, Chapman took out what looked like a pad of post-it notes. He had pre-written questions on the notes, designed to engage plaintiff in personal and sexual conversation. He peeled the notes off the pad one by one, sticking each note on the table between them. For example, one note said something like, "How does Phil feel about Kristen?" Another, something like, "What does Phil feel when he sees Kristen?" And another, "What scared Phil most about Kristen?" The notes continued until Chapman got to one note on which he asked her to guess what kind of underwear he was wearing. When plaintiff refused to answer, Chapman said he was wearing a black thong. He asked plaintiff if she was shocked. She said she definitely was, got up, and left.

22.     Later that evening, Chapman texted plaintiff, "sleep well thinking of you." He continued contacting plaintiff after that date.

**Plaintiff reports Chapman**

23.     On May 31, 2017, Chapman texted plaintiff about being on his golf team. He was referring to an upcoming golf tournament for local officials.

24.     Douglas Hulme, County Administrator, called plaintiff and said she would be paired with Chapman at the tournament. Plaintiff said she did not want to be paired with Chapman, that he had made inappropriate sexual advances

4

towards her. Hulme laughed as plaintiff told him what Chapman had done and how Chapman's conduct made her feel. As for partnering with Chapman, Hulme told plaintiff to "take one for the team." Plaintiff said it felt disgusting that he was whoring her out to play with Chapman.

25.     The next day, plaintiff reported Chapman's conduct to Robert Dorman, the County's Director of IT and Hulme's friend. Dorman said he would tell Hulme that plaintiff should not be partnered with Chapman at the golf tournament because of his (Chapman's) inappropriate sexual advances.

26.     Later, Dorman told plaintiff that Hulme insisted that plaintiff partner with Chapman. Dorman said Chapman had begged to golf with plaintiff. Plaintiff said she that if she had to be Chapman's partner, she would not attend. Dorman warned plaintiff that not going with Chapman would be a mistake.

**Chapman keeps harassing plaintiff**

27.     On or around June 1, 2017, Chapman came to plaintiff's office, telling her that he could get in trouble if plaintiff showed anyone his text messages. He instructed plaintiff to erase his messages from her phone and he started erasing messages from his phone. Plaintiff told him to stop making sexual advances and he would not have to worry about being in trouble. And he asked plaintiff when they would have their first kiss.

28.     On about June 3, 2017, plaintiff notified Prenzler and Chapman that she would not attend the golf tournament.

5

29.     Throughout the day and night on June 3, 2017, Chapman called plaintiff's phone, emailed her, and sent her text messages, saying things like, "I miss you."

30.     Also on June 3, 2017, Chapman contacted plaintiff to say he scheduled a meeting in Chicago on the same weekend she would be in Chicago. Upon information and belief, Chapman had demanded that someone working in plaintiff's office provide Chapman with her schedule for that weekend and other dates.

31.     While plaintiff tried to avoid Chapman, he repeatedly appeared at her office and he continued to call, email, or text her.

## Plaintiff again reports Chapman

32.     On or about June 7, 2017, plaintiff reported Chapman's conduct to County Board Chairman, Kurtis Prenzler. She showed Prenzler text messages and emails that Chapman had sent. Prenzler apologized for Chapman's conduct and said he felt terrible that plaintiff had been dealing with this.

33.     Prenzler said he would get Hulme involved in an investigation of Chapman's conduct. Plaintiff said that Hulme already knew and had told her to "take one for the team."

34.     Prenzler involved Hulme anyway, directing him to come speak with them. Hulme brought with him Madison County Compliance Officer, John Thompson. Hulme did not deny that plaintiff had talked to him about Chapman but claimed he did not realize what was going on. Thompson said "this guy" has got to go, referring to Chapman. Hulme instructed plaintiff to leave for the day. But

6

plaintiff's assistant came to the door and said not to come out, that "he" was here again. Hulme asked who. The assistant said, "Chapman" and that Chapman was refusing to leave even though the receptionist said plaintiff was not there. Hulme called Prenzler who, by this time had left. Prenzler returned and escorted Chapman out of the building.

### Chapman admits harassing plaintiff, then changes his mind

35.    On or about June 8, 2017, Prenzler told plaintiff that he had spoken with Chapman. Prenzler said Chapman admitted to plaintiff's claims of harassment and that maybe he had taken things too far. Prenzler said that when he and Chapman were talking, Chapman repeatedly left the room and, each time he returned, he told a different story. Prenzler said he kept notes of Chapman's changing stories. Prenzler told plaintiff to work out of the office until the matter was resolved, explaining that Chapman seemed erratic.

36.    Hulme later called plaintiff and said he had her on speakerphone with Thompson and Dorman. Hulme said Chapman now said their relationship was consensual. Hulme told plaintiff to write a statement. Dorman said to provide the exact time she told Chapman "no" or it was not sexual harassment.

### Prenzler warns plaintiff about retaliation

37.    On or about June 10, 2017, Prenzler and Hulme met with plaintiff and her husband to discuss a plan for moving forward. They all agreed the best step would be to ban Chapman from County buildings. Prenzler said to expect retaliation because Chapman was the most vindictive person in the County.

38.     At around this time, based on Prenzler and Hulme's instruction, plaintiff began working remotely, using a different office to conduct her work until the matter was resolved. Staff would bring her items from the office when needed.

39.     As of June 11, 2017, it appeared that Chapman might resign from the County Board and would no longer be around plaintiff's workplace. Within a short time, however, he changed his mind.

40.     Defendants then scheduled meetings to be held in places they knew Chapman might be and criticized plaintiff for not appearing, even though she offered alternative locations.

### The County decides it didn't violate its policy, then suspends plaintiff for an unnamed violation

41.     The County hired a retired Madison County judge to decide if plaintiff's allegations amounted to a violation of Madison County policy. The retired judge concluded that even taking plaintiff at her word, the events were not adequate for a finding under "the specific usage contained in the county policy." But he said the events could be sufficient "subjectively or under other circumstances." Thus, in hiring the judge, the County was not concerned with taking reasonable care to prevent and promptly correct any harassing behavior. The retired judge's summary, as disclosed to plaintiff, included no notes of interviews with any witnesses. Nor did the summary show that he interviewed witnesses to Chapman's conduct in the County offices who plaintiff had identified.

42.     Within a couple of weeks after the judge signed his report, the County placed plaintiff on administrative leave. The County claimed the leave was pending

an investigation of violations of personnel policies. The County did not specify the personnel policies it claimed plaintiff violated. Upon information and belief, the County notified the press of plaintiff's administrative leave. And upon information and belief, the County notified the press before notifying plaintiff.

43.     Within a few days, the County took plaintiff off its website as part of the Community Development staff.

### The County fires plaintiff and keeps retaliating

44.     On or about October 18, 2017, while plaintiff was still on administrative leave, a reporter told plaintiff that the Board had voted unanimously to terminate her employment and, in fact, the County discharged plaintiff that day.

45.     Post-termination, Prenzler, on behalf of the County distributed a press release to make it appear plaintiff was concealing information from the public.

46.     Post-termination, the County contested plaintiff's efforts to obtain unemployment compensation benefits leading to a delay in payment.

### Count I
### Title VII Sex Discrimination against Madison County

47.     Paragraphs 1 through 46 are incorporated as though fully stated in this Count.

48.     Defendants discriminated against plaintiff because of her sex, in violation of Title VII, 42 U.S.C. § 2000e-2, in these ways:

 a.  Subjected plaintiff to a hostile work environment.

 b.  Took tangible employment actions against plaintiff because she refused to acquiesce to Chapman's sexual advances.

9

c.  Paid plaintiff a lower salary.

49.    As a direct and proximate result of defendant's violation of Title VII, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant Madison County equitable relief, compensatory damages, attorneys' fees, costs, and such additional relief as is appropriate.

## COUNT II
### Title VII Retaliation against Madison County

50.    Paragraphs 1 through 49 are incorporated as though fully stated in this Count.

51.    Defendant discriminated against plaintiff, in violation of Title VII, 42 U.S.C. § 2000e-3, because she opposed conduct that she reasonably believed was unlawful under Title VII. Defendant's unlawful discrimination includes threatening her with consequences for refusing to participate in a golf tournament with the man who harassed her; failing to take actions to protect her from the man who was sexually harassing her; placing her on administrative leave; subjecting her to an inadequate investigation; publicizing misleading information about her; discharging her; and, continuing to retaliate against her post-termination.

52.    As a direct and proximate result of defendant's violation of Title VII, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant Madison County equitable relief, compensatory damages, attorneys' fees, costs, and such additional relief as is appropriate.

## COUNT III
## Equal Pay Act against Madison County

53.     Paragraphs 1 through 17 are incorporated as though fully stated in this Count.

54.     Madison County is an employer under the Equal Pay Act, 29 U.S.C. § 203(d) and had, while plaintiff was employed, employees subject to the provision of 29 U.S.C. § 203(d).

55.     At all times while employed by Madison County, plaintiff was an employee under the Equal Pay Act, 29 U.S.C. § 203 (e).

56.     Defendant discriminated against plaintiff based on her sex by paying her less than it paid a male employee, Frank Miles, who performed the same or a substantially similar job requiring equal skill, effort, and responsibility under similar working conditions in violation of the Equal Pay Act, 29 U.S.C. § 206(d).

57.     As a direct and proximate of defendant's violation of the Equal Pay Act, plaintiff was harmed.

58.     Defendant's conduct was willful.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant Madison County in an amount to be established at trial for the appropriate amount of backpay, liquidated damages, attorneys' fees, costs, and such further relief as the court deems appropriate.

11

## COUNT IV
## Illinois Equal Pay Act against Madison County

59.     Paragraphs 1 through 17 and 53 through 58 are incorporated as though fully stated in this Count.

60.     Madison County is an employer under the Equal Pay Act, 820 ILCS 112/5, in that it is a unit of local government in the State of Illinois.

61.     Plaintiff was, at all times material to this Count, an employee of Madison County under 820 ILCS 112/5.

62.     Defendant discriminated against plaintiff based on her sex by paying her less than it paid a male employee, Frank Miles, who performed the same or a substantially similar job requiring equal skill, effort, and responsibility under similar working conditions in violation of the Illinois Equal Pay Act.

63.     As a direct and proximate of defendant's violation of the Equal Pay Act, plaintiff was harmed.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant Madison County in an amount to be established at trial for the appropriate amount of backpay, interest, attorneys' fees, costs, and such further relief as the court deems appropriate.

## COUNT V
## 42 U.S.C. § 1983 Sex Discrimination against Madison County

64.     Paragraphs 1 through 46 are incorporated as though stated in this Count.

65.     Defendant Madison County is a person under 42 U.S.C. § 1983.

66.     Madison County, acting under color of state law, discriminated against plaintiff based on sex, in violation of her rights under the Fourteenth Amendment to the U.S. Constitution, as enforced under 42 U.S.C. § 1983, in these ways:

a. Subjected plaintiff to a hostile work environment.

b. Took tangible employment actions against plaintiff because she refused to acquiesce to Chapman's sexual advances.

c. Paid plaintiff a lower salary.

d. Failed to provide proper training to its supervisory staff on the appropriate actions to take when an employee reports sexual harassment.

e. Failed to provide proper training to its employees, including members of the County Board, on the obligation not to harass County employees.

f. Failed to investigate plaintiff's allegations of Chapman's conduct that addressed plaintiff's right to be free from sexual harassment in the workplace under federal and state law.

67.     Defendant's actions were intentional, willful, and in reckless disregard of plaintiff's rights secured by law and the Constitution.

68.     As a direct and proximate result of defendant's conduct, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant Madison County for compensatory and punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

13

## COUNT VI
## 42 U.S.C. § 1983 Retaliation against Madison County

69.     Paragraphs 1 through 46 are incorporated as though stated in this Count.

70.     Defendant Madison County is a person under 42 U.S.C. § 1983.

71.     Madison County, acting under color of state law, retaliated against plaintiff in violation of her rights under the Fourteenth Amendment to the U.S. Constitution as enforced under 42 U.S.C. § 1983, because she opposed conduct that she reasonably believed was unlawful sex discrimination. Defendant's retaliation includes threatening her with consequences for refusing to participate in a golf tournament with the man who harassed her; failing to take actions to protect her from the man who was sexually harassing her; placing her on administrative leave; subjecting her to an inadequate investigation; publicizing misleading information about her; discharging her; and, continuing to retaliate against her post-termination.

72.     Defendant's actions were intentional, willful, and in reckless disregard of plaintiff's rights secured by law and the Constitution.

73.     As a direct and proximate result of defendant's conduct, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant Madison County for compensatory and punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

## COUNT VII
## 42 U.S.C. § 1983 Sex Discrimination against Philip Chapman

74.     Paragraphs 1 through 46 are incorporated as though stated in this Count.

75.     Defendant Philip Chapman is a person under 42 U.S.C. § 1983. At all times relevant to this Complaint, Chapman has been a member of the Madison County Board.

76.     Chapman, acting under color of state law, discriminated against plaintiff based on sex, in violation of her rights under the Fourteenth Amendment to the U.S. Constitution as enforced under 42 U.S.C. § 1983, by harassing her because of her sex.

77.     Chapman's actions were intentional, willful, and in reckless disregard of plaintiff's rights secured by law and the Constitution.

78.     As a direct and proximate result of defendant's conduct, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant Philip Chapman for compensatory and punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

## COUNT VIII
### 42 .S.C. § 1983 Retaliation against Philip Chapman

79.     Paragraphs 1 through 46 are incorporated as though stated in this Count.

80.     Defendant Philip Chapman is a person under 42 U.S.C. § 1983. At all times relevant to this Complaint he has been a member of the Madison County Board.

81.     Chapman, acting under color of state law, discriminated against plaintiff based on sex, in violation of her rights under the Fourteenth Amendment to the U.S. Constitution as enforced under 42 U.S.C. § 1983, by retaliating against her because she opposed unlawful sex discrimination. Defendant's retaliation includes insisting that she be his partner at the golf outing; telling others that plaintiff had consented to or invited his sexual conduct and characterizing plaintiff in a false light to avoid the consequences of his own discriminatory conduct; refusing to resign or avoid plaintiff despite his agreement to do so; refusing to stop communicating with plaintiff; insisting that plaintiff delete messages and deleting messages to destroy evidence of his conduct; and, otherwise engaging in conduct that led to plaintiff being placed on administrative leave, having her job duties taken away, being discharged, and being subjected to post-termination retaliation.

82.     Chapman's actions were intentional, willful, and in reckless disregard of plaintiff's rights secured by law and the Constitution.

83.     As a direct and proximate result of defendant's conduct, plaintiff has
and will continue to suffer damages including loss of wages, benefits, humiliation,
loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and
against defendant Philip Chapman for compensatory and punitive damages,
attorneys' fees, costs, and such additional relief as is appropriate.

### COUNT IX
### Sex Discrimination against Kurtis Prenzler

84.     Paragraphs 1 through 46 are incorporated as though stated in this
Count.

85.     Defendant Kurtis Prenzler is a person under 42 U.S.C. § 1983. At all
times relevant to this Complaint he has been a member of the Madison County
Board and its Chairman.

86.     Prenzler, acting under color of state law, discriminated against
plaintiff because of her sex in violation of her rights under the Fourteenth
Amendment to the U.S. Constitution as enforced under 42 U.S.C. § 1983, in these
ways:

a. He subjected plaintiff to a hostile work environment.

b. He took tangible employment actions against plaintiff because she
refused to acquiesce to Chapman's sexual advances.

c. He paid plaintiff a lower salary.

d. He failed to provide proper training to supervisory staff on the
appropriate actions to take when an employee reports sexual harassment.

17

e. He failed to provide proper training to County employees, including members of the County Board, on the obligation not to harass County employees.

f. He failed to investigate plaintiff's allegations of Chapman's conduct that addressed plaintiff's right, under federal and Illinois law, to be free from sexual harassment in the workplace.

87.    Defendant's actions were intentional, willful, and in reckless disregard of plaintiff's rights secured by law and the Constitution.

88.    As a direct and proximate result of defendant's conduct, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant for compensatory and punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

## COUNT X
### 42 U.S.C. § 1983 Retaliation against Kurtis Prenzler

89.    Paragraphs 1 through 46 are incorporated as though stated in this Count.

90.    Defendant Kurtis Prenzler is a person under 42 U.S.C. § 1983. At all times relevant to this Complaint he has been a member of the Madison County Board and its Chairman.

91.    Prenzler, acting under color of state law, discriminated against plaintiff based on sex, in violation of her rights under the Fourteenth Amendment

18

to the U.S. Constitution, as enforced under 42 U.S.C. § 1983, by retaliating against her because she opposed unlawful sex discrimination. Defendant's retaliation includes requiring her participate as the golf partner with the man who was harassing her, failing to take actions to protect her from the man who was sexually harassing her, placing her on administrative leave, subjecting her to an inadequate investigation, publicizing misleading information about her in the media, taking actions leading to her discharge, and engaging in post-termination retaliation.

92.    Prenzler's actions were intentional, willful, and in reckless disregard of plaintiff's rights secured by law and the Constitution.

93.    As a direct and proximate result of defendant's conduct, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant Kurtis Prenzler for compensatory and punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

## COUNT XI
### 42 U.S.C. § 1983 Sex Discrimination against Douglas Hulme

94.    Paragraphs 1 through 46 are incorporated as though stated in this Count.

95.    Defendant Douglas Hulme is a person under 42 U.S.C. § 1983. At all times relevant to this Complaint he has been an employee of Madison County and its Administrator.

19

96.     Hulme, acting under color of state law, discriminated against plaintiff based on sex, in violation of her rights under the Fourteenth Amendment to the U.S. Constitution, as enforced under 42 U.S.C. § 1983, by paying her less money, creating a hostile work environment, and conditioning her employment on acquiescence to Philip Chapman's sexual advances.

97.     Hulme's actions were intentional, willful, or in reckless disregard of plaintiff's rights secured by law and the Constitution.

98.     As a direct and proximate result of defendant's conduct, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant for compensatory and punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

## COUNT XII
### 42 U.S.C. § 1983 Retaliation against Douglas Hulme

99.     Paragraphs 1 through 46 are incorporated as though stated in this Count.

100.    Defendant Douglas Hulme is a person under 42 U.S.C. § 1983. At all times relevant to this Complaint he has been an employee of Madison County and its Administrator.

101.    Hulme, acting under color of state law, retaliated against plaintiff in violation of her rights under the Fourteenth Amendment to the U.S. Constitution as enforced under 42 U.S.C. § 1983, because she opposed conduct that she reasonably

believed was unlawful sex discrimination. Defendant's retaliation includes requiring her participate as the golf partner with the man who was harassing her, failing to take actions to protect her from the man who was sexually harassing her, placing her on administrative leave, subjecting her to an inadequate investigation, publicizing misleading information about her in the media, taking actions that led to her discharge, and engaging in post-termination retaliation.

102.    Hulme's actions were intentional, willful, and in reckless disregard of plaintiff's rights secured by law and the Constitution.

103.    As a direct and proximate result of defendant's conduct, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

WHEREFORE, plaintiff asks the court to enter judgment in her favor and against defendant for compensatory and punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

/ s/ Ferne P. Wolf
Ferne P. Wolf
fw@sowerswolf.com
Joshua M. Pierson
jp@sowerswolf.com
Jill A. Silverstein
js@sowerswolf.com
Sowers & Wolf, LLC
530 Maryville Centre Drive, Suite 460
St. Louis, MO 63141
314 744-4010/314 744-4026 (fax)

21