IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KRISTEN POSHARD,                         )
                                         )
                    Plaintiff,           )
                                         )
vs.                                      )        Cause No. 3:19-cv-00324-SMY-GCS
                                         )
MADISON COUNTY, IL, et al.,              )
                                         )
                    Defendants.          )
_____ )

## MEMORANDUM & ORDER

SISON, Magistrate Judge:

### INTRODUCTION AND BACKGROUND

Before the Court is Plaintiff Kristen Poshard's Motion to Determine Sufficiency of Madison County's Responses to Plaintiff's First and Second Requests for Admissions. (Doc. 110). The instant matter was referred to the Court by United States District Judge Staci M. Yandle. (Doc. 111).

In her motion, Plaintiff seeks a determination from this Court regarding certain objections and responses made by Defendant Madison County to Plaintiff's First and Second Requests for Admissions. (Doc. 110). As an initial matter, Plaintiff argues that the instant discovery motion had to be filed because of the position recently taken by Defendant that Plaintiff did not sue the County, but rather the Madison County Board. (Doc. 110, p. 1). Subsequent to taking this position, Defendant has resisted various discovery efforts claiming that the information requested by Plaintiff is under the control of other offices of Madison County and not the Madison County Board ("Board") itself.

*Id.* Plaintiff, however, asserts that her lawsuit is against Madison County and not the Board and points out that the Board is not a separate entity that can sue or be sued. *Id.* at p. 4.

Defendant Madison County filed an opposition in response. (Doc. 120). Defendant argues that a suit against Madison County is a suit against its Board. *Id.* at p. 3. For support, it points to the fact that the power to contract rests exclusively with the Board. *Id.* (citing *Wheeler v. Wayne County*, 24 N.E. 625 (1890)). It further notes that the power to bind a county likewise rests with the county board. *Id.* (citing *Bouton v. Bd. of Supervisors of McDonough Cnty.*, 84 Ill. 384 (1877)). Because one of the actions at issue in this matter, *i.e.*, the termination of Plaintiff's employment, was taken by the Madison County Board, the Defendant reasons that a dispute over that action is essentially one against the Board itself. *Id.* (citing *County of Fayette v. Morton*, 53 Ill. App. 552 (Ill. Ct. App. 1894)).

In light of this position, Defendant further argues that the recent disputes over discovery can be cured with Plaintiff amending her complaint to match her allegations. (Doc. 120, p. 2). Defendant points to the fact that the Board does not have custody or control over much of what the Plaintiff has sought by way of discovery. *Id.* As an example, Defendant notes that Plaintiff has sued various persons in their individual capacity, *i.e.*, Philip Chapman, Kurtis Prenzler and Douglas Hulme. But, because those same individuals have held or currently hold official titles in Madison County, the discovery Plaintiff seeks is currently being held by the offices of the individuals she has named, specifically, the Offices of the County Board Chairman and County

Administrator. *Id.* To further underscore the purported separate nature of these positions, Defendant notes that the aforementioned offices do not currently have counsel entered in this litigation.  *Id.*

A hearing was held on May 20, 2020, at which time the Court heard arguments from the parties. (Doc. 121). Plaintiff argued that the Defendant's responses to her requests for admissions were deficient because the Defendant only responded for the Board, but the requests were for information about Madison County as a whole. *Id.* Defendant countered that the threshold issue is whether a suit against Madison County is a suit against the Board, which is a legal issue to be determined by the court. *Id.* Defendant further claimed that Plaintiff was seeking information from the wrong defendant as the offices of the county board chairman and county board administrator had such information.[1] *Id.* Defendant also noted that it made a good faith effort to request documents from these officeholders, but it got no response. *Id.*

Defendant filed a response in opposition on the day of the hearing. (Doc. 120). Because Plaintiff's counsel did not have an opportunity to review the filing prior to the hearing, the Court gave Plaintiff an opportunity to file a reply with specific directions to provide the Court with further briefing on the appropriate entity to respond to discovery requests. (Doc. 121). Because of its desire for additional briefing, the Court also indicated

---

[1]        The issue of the appropriate entity had come before the Court previously at another discovery dispute held on February 3, 2020. (Doc. 76). At the hearing, Plaintiff indicated that she had sought certain information from Madison County, but the Defendant indicated that it did not have such information, as the information was in the possession of other offices within Madison County. The Court expressed initial skepticism with Defendant's position as Plaintiff had sued Madison County. Nevertheless, the Court declined to take a position on the matter and suggested to Plaintiff that she subpoena the specific offices identified by the Defendant for the information.

it would likely give permission for the filing of a sur-reply, which was granted to the Defendant on June 3, 2020. (Doc. 130).

The Court held another hearing on July 22, 2020, to announce its decision. (Doc. 149).[2] The Court granted in part and denied in part Plaintiff's motion. *Id.* The Court, however, agreed to memorialize its decision in writing in the event the Defendant wished to appeal the Court's ruling to the District Court.

## DISCUSSION

**A.      The Appropriate Entity to Respond to Outstanding Discovery Requests.**

The issue before the Court essentially boils down to which entity did Plaintiff sue and what is the extent of that entity's ability to obtain and disclose the requested information through the discovery process. Answering the first question, Plaintiff has sued Madison County. In her Amended Complaint Plaintiff has named Madison County in the following eight counts:  Count I (Title VII Sex Discrimination); Count II (Title VII Retaliation); Count III (Equal Pay Act); Count IV (Illinois Equal Pay Act); Count V (42 U.S.C. § 1983 Sex Discrimination); Count VI (42 U.S.C. § 1983 Retaliation); Count XIII (775 ILCS § 5/2-101, *et seq.*, Illinois Human Rights Act Sex Discrimination); and Count XIV (775 ILCS § 5/6-101, *et seq.*, Illinois Human Rights Act Retaliation). (Doc. 16, p. 9-15, 21-23).

---

[2]      To the extent that anything in this Memorandum and Order conflicts with and/or is inconsistent with the oral ruling pronounced by the Court at the July 22nd hearing, this written Memorandum and Order controls and is the final decision of the Court.

Defendant, however, argues that a suit against Madison County is a suit against the Board. (Doc. 122). To analyze the dichotomy the Defendant is attempting to make, it is important to examine the structure of Madison County government. Madison County is organized under a township form of government. *See County Board*, MADISON COUNTY, https://www.co.madison.il.us/government/county_board/index.php (last visited July, 20, 2020). Township counties operate with standing committees, which study problems arising under their purview and recommend actions to the full board. *See* ILLINOIS ASSOCIATION OF COUNTY BOARD MEMBERS, INSIDE THE COURTHOUSE: ILLINOIS COUNTY GOVERNMENT 2 (2019), https://ilcounty.org/file/213/Inside%20the%20Courthouse%202019.pdf. Typically, the county board has legislative and executive functions. *Id.* In its legislative capacity, the board passes ordinances and resolutions. *Id.* In its executive capacity, the board administers the activities of county departments and offices unless the department is headed by another elected official. *Id.*

In Madison County, the board's executive functions are largely held by the County Board Chairman, an elected position. *See County Board Office*, MADISON COUNTY, https://www.co.madison.il.us /departments/county_board_office_(2)/index.php (last visited July 20, 2020). As the county's "chief executive officer," the chairman appoints department heads and coordinates their operations, appoints board members to standing committees, and presides over county board meetings. *Id.* The chairman's appointments are subject to approval by the county board. *See* MADISON COUNTY, IL., CODE OF ORDINANCES TIT. III CH. 30 § 30.04(A) (2005). One of the appointed officials, the County Administrator, serves as an advisor to the chairman and "coordinates and implements

the actions of the County Board, directs the day-to-day operation of County facilities, programs and personnel and provides staff support to the County Board in policy-making (sic)." *See County Board Office*, MADISON COUNTY. *See also* MADISON COUNTY, IL., CODE OF ORDINANCES TIT III CH. 31 § 31.16(B)-(C) (2005). Thus, if there is a so-called "executive branch" of Madison County, it would consist of the County Board Chairman and the County Administrator.

In this case, Plaintiff claims she worked for the Department of Community Development, as Chief Deputy Administrator. (Doc. 16, § 13). This department works to expand economic opportunities, to promote affordable housing, and to alleviate poverty in Madison County. *See Community Development*, MADISON COUNTY, https://www.co.madison.il.us/departments/community_development/index.php (last visited July 20, 2020). The head of this department is an appointed position. *Id.*

Consistent with the above description of Madison County government, Defendant attempts to distinguish between the Board on the one hand and the County Board Chairman and Administrator on the other. The former is the legislative arm of Madison County, while the latter is the executive. Because Plaintiff has sued the Board, Defendant argues that it does not have control or access to much of the information Plaintiff is seeking because such information is maintained and controlled by the offices of the County Board Chairman and Administrator. (Doc. 122).

Defendant relies on various Illinois statutes to arrive at the conclusion that a suit against Madison County is actually a suit against the Board. First, Defendant notes that

the "powers of the county as a body corporate or politic, shall be exercised by a county board[.]" 55 ILL. COMP. STAT. § 5/5-1004. Defendant further relies on the statutory provision indicating that county boards have the duty "to take and order suitable and proper measures for the . . . defending of all suits brought . . . against their respective counties." 55 ILL. COMP. STAT. § 5/1-6003.

These statutory provisions, however, do not support the conclusion that suits against a county are tantamount to suits against a county board. For example, the plain language of Section 5/1-6003 actually contemplates "suits brought . . . against . . . counties." 55 ILL. COMP. STAT. § 5/1-6003. The statute does no more than simply vest the county board with responsibility to handle such suits. It does not, as Defendant suggests, turn such suits into suits against the Board.

Defendant's reliance on Section 5/5-1004 fares no better. While it is true that Section 5/5-1004 authorizes the county board to exercise the "powers of the county as a body corporate or politic," it does not mean that the county board is a separate entity which can be sued. In fact, Illinois courts construing Section 5/5-1004 have concluded that county boards are not entities, separate and apart from their respective counties, that can be sued. For example, in *Richardson v. Cty. of Cook*, 621 N.E.2d 114 (Ill. Ct. App. 1993), an employee of a county hospital brought suit against her supervisor and other employees for intentional torts and civil rights violations, but the employee also named the county board and hospital as defendants. *Id.* at 116. The court held that the county board and hospital were improperly named as defendants in the case. *Id.* at 116. Relying

on Section 5/5-1004, the court reasoned that the board was "not a separate entity which can be sued." *Id.* at 117. Rather, Section 5/5-1004 simply made the board's powers "co-extensive with the County." *Id. See also Appel v. LaSalle County State's Attorney Felony Enforcement Unit*, No. 18-cv-2439, 2019 WL 4189461, at *3 (N.D. Ill. Sept. 4, 2019)(holding that County Board and State's Attorney's Office were not suable entities because they did not "'enjoy separate legal existence independent of the County.'")(quoting *Reese v. Chicago Police Dept.*, 602 F. Supp. 441, 443 (N.D. Ill. 1984)). As to the hospital, the court reasoned that it was not subject to suit as well "because it [was] owned and operated by the County, and [was] not itself a legal entity." *Id. See also Jackson v. Village of Rosemont*, 536 N.E.2d 720, 723 (Ill. Ct. App. 1988)(holding that stadium, as a building owned and operated by the Village of Rosemont, was not a legal entity that can sue or be sued).

Federal courts interpreting Illinois law have also concluded that counties are the appropriate entity to be sued and not the sub-divisions, offices, or departments within the county.  For example, the court, in *Khan v. Cook Cty. Dep't of Highways*, No. 93-C-1375, 1994 WL 523703 (N.D. Ill. Sept. 23, 1994), held that a county department of highways was not a separate legal entity and thus could not be sued. *Id.* at *2. The court reasoned that counties were considered legal entities and under the express terms of Illinois statutory law could be sued in court. *Id.* (citing 55 Ill. Comp. Stat. § 5/5-1001). However, subdivisions of Illinois counties were not separate legal entities and thus could not be sued. *Id. See also Payne v. Cook County Hospital*, 719 F. Supp. 730, 733-734 (N.D. Ill. 1989)(granting motion to dismiss because hospital had no legal existence separate and

apart from Cook County and thus could not be sued, but allowing leave to amend to name Cook County as a defendant); *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)(granting motion to dismiss county board as a separate defendant reasoning that there was no need to name board as a defendant in addition to the county because the board's governmental authority was coextensive with that of the county and its institutional liability was as well in that it had to pay any judgment rendered against the county).

The Illinois statutes cited by the Defendant merely serve to confer certain powers and duties to a county board. The cases cited by the Defendant from the late 19th Century also stand for the proposition that certain powers, duties, and functions are conferred on a county board. *See, e.g., Wheeler v. Wayne County*, 24 N.E. 625, 626 (1890)(noting that power to contract could only be exercised by county board); *Bouton v. Bd. of Supervisors of McDonough Cnty.*, 84 Ill. 384, 392 (1877)(noting that "powers of a county, as a body politic, can only be exercised by the board of supervisors" and not by any one individual member). Nothing in the aforementioned statutes or cases cited by the Defendant remotely stand for the proposition that a suit against the county is one against the county's board.

The Defendant further argues that these issues over the appropriate defendant could easily be addressed by having Plaintiff amend her complaint to match her allegations. (Doc. 120, p. 2). Defendant asserts that Plaintiff has named Defendants Chapman, Prenzler and Hulme in their individual capacities, but refers to these

individuals in the respective counts against them by their official title. *Id.* According to the Defendant, it does not have custody or control over much of what Plaintiff is seeking in discovery because that information is maintained and controlled by the offices held by the individuals Plaintiff has named, *i.e.*, the Office of the County Board Chairman and the Office of County Administrator. *Id.* Plaintiff, however, has not named Defendants Chapman, Prenzler and Hulme in their official capacity, and the Court cannot force Plaintiff to do so. Nor can the Defendant unilaterally declare for itself who the Plaintiff is suing and respond or refuse to respond to discovery based on who the Defendant believes that the Plaintiff should be suing. The simple and unavoidable truth is that the Plaintiff is the master of her complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-399 (1987). And, in the instant case, Plaintiff has sued Madison County.

The discussion now turns to the second question to be answered which is whether the Defendant has the ability to obtain and disclose the requested information through the discovery process. The Defendant argues that it does not have the ability to obtain the information requested by the Plaintiff. The Defendant further asserts that it made a good faith effort to request documents from these officeholders, but it got no response. But, the statutory authority cited by the Defendant belies such a position. As discussed previously, county boards have the duty "to take and order ***suitable and proper measures for the . . . defending of all suits*** brought . . . against their respective counties." 55 ILL. COMP. STAT. § 5/1-6003 (emphasis added). Such suitable and proper measures surely include provisions for the conduct of discovery as a lawsuit cannot properly be defended

without engaging in discovery. As such, it stands to reason from this statutory provision alone that the Defendant has the power and authority to request and obtain information from various offices and departments within Madison County. For the Defendant to claim otherwise would render this statutory duty meaningless.

Furthermore, when Section 5/1-6003 is interpreted together with Section 5/5-1004, the Board's power over other departments and offices within Madison County becomes even more apparent. As discussed previously, Illinois courts have interpreted Section 5/5-1004 as conferring on a county board powers co-extensive with that of the county. This means that the scope of the Board's powers extends to and covers all of Madison County. Indeed, this is consistent with the fact that a county board exercises the powers of the county as a "body politic." The phrase "body politic", as used in Section 5/5-1004, is defined as "a group of persons politically organized under a *single governmental authority*." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 10th Ed. (1997) (emphasis added). Defendant's interpretation, however, which seeks to treat the legislative and executive branches of Madison County as separate and distinct legal entities, would completely undermine the notion of a "single governmental authority" that the phrase "body politic" conveys. The Illinois statutory scheme clearly does not envision a circumstance where the Board, at least with respect to the defense of a lawsuit against Madison County, is powerless over other offices and departments within the County.

Basic agency principles further support a finding that the Defendant is responsible for obtaining and disclosing the requested information. When it comes to whether the

requested information is in Defendant's control, the Court finds that it is based on the statutory authority cited above. The test for control, *i.e.*, whether a party can be compelled to produce certain documents, is whether the party has a legal right to obtain the evidence. *See Thermal Design Inc v. American Society of Heating, Refrigerating and Air-Conditioning*, 755 F3d. 832, 838-839 (7th Cir. 2014)(citing *Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004). Even though the Defendant claims that it does not maintain the requested discovery (as it is within the custody and control of the Office of County Board Chairman and County Administrator), there is nothing suggesting that the Defendant does not have a legal right to obtain information from those offices to respond to the Requests for Admissions propounded by the Plaintiff. In fact, it has the statutory authority and duty to do so.

To avoid this result, however, Defendant relies on a string of cases involving both the Seventh Circuit and the Illinois Supreme Court where the county was held to be a necessary party in a lawsuit against an independently elected official. (Doc. 128, p. 1-4). In *Carver v. Sheriff of LaSalle County, Illinois*, 243 F.3d 379 (7th Cir. 2001), the Seventh Circuit identified a recurring question which it asked the Illinois Supreme Court to resolve:

> Who pays official-capacity judgments in Illinois when the wrongdoer is an independently elected officer? Sheriffs, treasurers, clerks of court, and several other officers within Illinois counties are elected directly by the people and establish their own policies, but they lack authority to levy taxes or establish their own budgets. This leads the independently-elected officers to contend that the counties must pay; but the counties, which are unable to control the conduct of the officers, insist that they cannot be held liable because an official-capacity judgment runs against the office and not against an "employee" of the county. The law of Illinois does not provide a clean solution to this conflict, in which each insists that the other must pay.

*Id.* at 381.

The aforementioned question stemmed from a lawsuit where two employees of the Sheriff of LaSalle County filed suit under Section 1983 and Title VII alleging sex discrimination and other wrongs. *See Carver*, 243 F.3d at 381. The plaintiffs initially named LaSalle County as an additional defendant because of the fact that the sheriff's budget derived from the enactments of the county board. *Id.* Hence, the county would be the source of any funds to pay a judgment. *Id.* The county, however, sought and obtained its dismissal from the case arguing that it could not control and thus should not be responsible for the sheriff's activities. *Id.* After the county exited the case, the sheriff settled with the plaintiffs for the sum of $500,000. *Id.*

The sheriff's office lacked the funds to pay the judgment so the plaintiffs commenced an action against the county under Rule 69 of the Federal Rules of Civil Procedure to force the county to indemnify the sheriff's office or hold the county directly liable. *See Carver*, 243 F.3d at 381. The district court initially dismissed the proceeding indicating that it was not a proper invocation of Rule 69, but the Seventh Circuit reversed in *Carver v. Condie*, 169 F.3d 469 (7th Cir. 1999). *Id.* On remand, the district court dismissed a second time concluding that the county was not responsible for payment, upon which the case came back to the Seventh Circuit. *Id.*

The Illinois Supreme Court agreed to take up the certified question from the Seventh Circuit and described the question as follows:

> Whether, and if so when, Illinois law requires counties to pay judgments entered against a sheriff's office in an official capacity. If [the Supreme Court of Illinois] believes that the answer depends on whether the case was settled as opposed to litigated, we would welcome treatment of that distinction as well.

*Carver v. Sheriff of LaSalle County*, 787 N.E.2d 127, 133 (Ill. 2003). Relying on an interpretation of the Tort Immunity Act, 745 ILCS § 10/1-101, *et seq.*, and the Counties Code, 55 ILCS § 5/1-1001, *et seq.*, the Illinois Supreme Court concluded as follows:

> Under Illinois law a sheriff, in his or her official capacity, has the authority to settle and compromise claims brought against the sheriff's office. Because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity. We further hold that this conclusion is not affected by whether the case was settled or litigated.

*Id.* at 141. The Illinois Supreme Court reasoned that a county sheriff's office was a "local public entity" within the meaning of the Tort Immunity Act and thus the sheriff, as the person vested with the authority to make "over-all policy decisions" for the sheriff's office, could settle any claim filed against such office. *Id.* at 138. The Illinois Supreme Court further reasoned that the county was obligated to pay the judgment under its interpretation of the Counties Code as the sheriff's office lacked the authority to levy taxes or establish a budget and because public funds were appropriated to the sheriff's office by the county board. *Id.* Based on the Illinois Supreme Court's handling of the certified question, the Seventh Circuit later noted that a county is a necessary and indispensable party "in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) ***in an official capacity***." *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003) (emphasis added).

Based on this line of cases, Defendant argues that the Plaintiff's requests for discovery were improperly addressed to Madison County as an entity. (Doc. 128, p. 3). Defendant relies on the Illinois Supreme Court's reasoning in *Carver* where it noted that the sheriff's office in its official capacity, and not the County, was the plaintiff's employer for purposes of Title VII. *Id.* at p.2 (citing *Carver*, 787 N.E.2d at 134). Defendant further relies on the Illinois Supreme Court's reasoning which stated that the county sheriff, as an independently elected official, was a local public entity within the meaning of the Tort Immunity Act and thus had the independent authority to litigate and settle Title VII claims. *Id.* (citing *Carver*, 787 N.E.2d at 137-139).

From this, Defendant makes a comparison between the local county sheriff and the County Board Chairman, who are both independently elected officials. Based on this comparison, Defendant points out that Plaintiff was an employee within the executive branch of government, "subject to management and control by independently elected officials, namely the County Board Chairman and his County Administrator." (Doc. 128, p. 3). Thus, Defendant reasons that liability for any Title VII violations "attaches to those independently elected officials in their official capacity[,]" as it did with the Sheriff in *Carver*. *Id.*

But, as for Madison County, Defendant claims that it is only a proper party because it bears the financial responsibility for paying a judgment. (Doc. 128, p. 3-4). Defendant further claims that Madison County does not have the authority to approve a settlement between a Title VII plaintiff and an independently elected official, *i.e.*, the County Board Chairman. As such, Defendant claims that Madison County does not have

litigation control over the case and thus does not control documents requested in discovery, which Defendant claims is controlled by the offices of the independently elected officials. *Id.* at p. 4. Accordingly, Defendant concludes that the independently elected officials in their official capacity are the proper defendants, and thus Plaintiff should be seeking discovery responses from the offices of those officials (as opposed to Madison County) either by naming them as defendants or by serving subpoenas. *Id.*

The *Carver* analysis put forth by the Defendant, however, does not change the court's decision.  First and foremost, the *Carver* cases dealt with a very precise question, *i.e.*, which entity is responsible for paying a judgment obtained against an independently elected official in his or her official capacity. It has nothing to do with the conduct of discovery and/or who should be responding to discovery. Second, Defendant ignores the immediate facts on the ground. The independently elected office holder (*i.e.*, the Sheriff) in *Carver* was sued in his official capacity only. Here, on the other hand, the independently elected office holder (*i.e.*, the County Board Chairman) and other office holders have been sued in their individual capacities, not their official capacities. And, unlike *Carver*, where the county was only brought into the suit to pay a judgment, the Plaintiff in the instant matter has sued Madison County directly. It is clear from *Carver*, that its holdings only apply to official capacity suits against independently elected office holders and that in such suits the county is on the hook to pay for any judgment that is obtained against the office holder. As the Amended Complaint is currently constructed, there is no claim against an independently elected office holder in an official capacity.

However much the Defendant would like to characterize the Plaintiff's claims in a different manner, it cannot. Again, the Plaintiff is the master of her complaint.

Defendant also misses another critical distinction discussed by Illinois Supreme Court in *Carver*. Defendant focuses on the notion of an "independently elected officer" as central to its reasoning for why the legislative and executive branches of Madison County should be treated as separate and distinct legal entities. However, the holding in *Carver* was also based on the Illinois Supreme Court's finding that the sheriff's office was a "local public entity" because the sheriff was vested with the "authority to make over-all policy decisions" for the office of the county sheriff. *Carver*, 787 N.E.2d at 136. Further illustrating this point, in *Franklin v. Zaruba*, 150 F.3d 682 (7th Cir. 1998), the Seventh Circuit noted that there was an important distinction between general county government and the county sheriff's office. *Id.* at 686. That distinction rested on the fact that the sheriff was the policymaker for the county's sheriff's office, but not for the county itself. *Id.* at 685. Here, however, both the executive and legislative branches of Madison County comprise the general county government, and together they share responsibility for making policy decisions for all of Madison County. It is thus quite distinct from the example of the sheriff's office discussed in *Carver*. As such, even though the executive branch does consist of independently elected officials, it is doubtful that the executive branch would be treated separately as a "local public entity" within the meaning of the Tort Immunity Act. The Court has found no such authority to support such a novel position, nor has any been provided to the Court by the parties.

Finally, if the Court were to treat the executive and legislative branches separately in the manner suggested by Defendant, it would cause confusion and turmoil in the conduct of discovery involving lawsuits against county governments. Indeed, the Court has already seen such confusion and turmoil reign supreme in the instant case. Plaintiff filed her lawsuit against Madison County and the individual defendants in March 2019. Almost a year and a half later, Plaintiff is still without significant discovery on matters regarding the termination of her employment. The Seventh Circuit in *Carver* noted that "[a] state may not evade compliance by modeling its internal organization after a huckster's shell game, so that no matter which entity the plaintiff sues, the state (or its subdivisions) always may reply that someone else is responsible . . . ." *Carver*, 243 F.3d at 386. Although this was in the context of the payment of a judgment, a similar situation has played out here during discovery with the Defendant pointing out that other offices or departments have the information the Plaintiff is seeking.

Having said that, the Court does understand the argument the Defendant is trying to make. There very well may be an issue as to the appropriate entity for Title VII liability as the Defendant suggests. However, the Court is not expressing an opinion nor is it tasked with resolving that issue. This is an issue that must potentially be resolved by the district court on a motion for summary judgment or some other dispositive motion where that issue can properly be placed before the Court.

The only relevant issue before the Court for purposes of this discovery motion is whether the Defendant has the ability to obtain the information requested by the Plaintiff

through discovery. It is abundantly clear from the statutory scheme discussed above that the Board has the power to order the various offices, departments, and/or sub-units within Madison County to provide it with information in defense of the lawsuit filed against Madison County. Therefore, the Defendant may not resist or object to future discovery attempts by asserting that the information is within the control of another office, department or sub-unit within Madison County.

**B.      Requests for Admissions**

    **1.      Defendant's Objections to Requests for Admissions.**

Plaintiff asks the Court to overrule the Defendant's objections to Request Nos. 2, 3 and 4 of the First Request for Admissions and Defendant's objections to the Second Request for Admissions. (Doc. 110, p. 7). The requests at issue are as follows:

Request No. 2 (1st Request):   Plaintiff did not work for an entity called "Administration of Madison County."

Request No. 3 (1st Request): In 2017, plaintiff worked for Madison County.

Request No. 4 (1st Request):  Douglas Hulme was, in 2017, an employee of Madison County.

Request No. 1 (2nd Request):   There is no statutorily created entity called "Executive Branch of Madison County."

Request No. 2 (2nd Request):   There is no statutorily created entity called "Executive Branch of Madison County Government."

Request No. 3 (2nd Request):   Plaintiff has never worked for an entity called "Executive Branch of Madison County."

Request No. 4 (2nd Request):   Plaintiff has never worked for an entity called "Executive Branch of Madison County."

Request No. 5 (2nd Request):  Douglas Hulme has never worked for an entity called "Executive Branch of Madison County."

Request No. 6 (2nd Request):  Douglas Hulme has never worked for an entity called "Executive Branch of Madison County Government."

(Doc. 110, Exh. 1, 2). Except for Request No. 4 (1st Request), Defendant objected to each of the above requests by stating:  "Defendant objects to this Request as it is not a proper request under FRCP 36, in that it solely seeks a legal conclusion rather than a fact, the application of law to a fact, or an opinion about either a fact or an application of law to a fact." *Id.*

Rule 36 of the Federal Rules of Civil Procedure allows a party to serve a request for admissions "relating to: facts, the application of law to fact, or opinions about either[.]" FED. R. CIV. PROC. 36(a)(1)(A). The burden is on the party raising the objection to show that the objection was proper. *See Earl v. Xerox Business Services*, No. 1:13-cv-01847-LJM-MJD, 2014 WL 4804279, at *1 (S.D. Ind. Sept. 26, 2014); *Moses v. Halstead*, 236 F.R.D. 667, 680 (D. Kansas 2006). In her motion, Plaintiff argues that the requests propounded to Defendant did not solely call for a legal conclusion, but at the very least involve the application of law to fact. (Doc. 110, p. 5). Defendant's only response was its responses "were accurate and adequate to the best of its ability and control[.]" (Doc. 120, p. 4). The bulk of Defendant's response in opposition was devoted to the issue of the appropriate entity to respond to discovery, which was resolved above.

It is true that a request cannot seek admission as to a pure conclusion of law. *See P.L.U.S. Brokerage, Inc. v. Jong Eun Kim*, 908 F. Supp. 2d 711, 715 (D. Md. 2012). While the

instant requests appear to involve legal issues, the commentary to the rules approve of certain admission requests related to such issues. *See, e.g., Thompson v. Beasley*, 309 F.R.D. 236, 241 (N.D. Miss. 2015)(noting that the commentary approved of admissions related to certain legal issues, "such as whether an employee acted within the scope of his employment[.]"). The instant requests are similar to the requests approved of by the commentary mentioned in *Thompson* in that they merely seek a response as to whether the Plaintiff or Defendant Hulme worked for a specific office or entity of Madison County. The Court therefore overrules the Defendant's objections to Request No. 2 and No. 3 of the First Request for Admissions and its objections to Request Nos. 2-6 of the Second Request for Admissions.

Two of the requests at issue, however, do fall within the category of seeking an admission as to a pure conclusion of law. Request Nos. 1 and 2 of the Second Request for Admissions seek an admission as to whether there is a statutorily created entity called "Executive Branch of Madison County" and "Executive Branch of Madison County Government." Defendant's objections to the instant requests are proper, and its objections are therefore sustained.

With respect to Request No. 4 of the First Request for Admissions, Defendant objected stating: "Defendant objects to this Request, as it requests information pertaining to another Defendant, on whose behalf this Defendant is not required to respond. Thus, it is an improper request under FRCP 36." The gravamen of Defendant's objection is that it involves another Defendant and as such, the request is more properly directed to that

party. However, that is not a proper objection. *See, e.g., Harris v. Koenig*, 271 F.R.D. 356, 374 (D.D.C. 2010)(overruling objection that a request was better directed to another defendant as it was not an answer permitted by Rule 36). The only answers permitted by Rule 36 are as follows:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

FED. R. CIV. PROC. 36(a)(4). *See also Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 531 (S.D. W. Va. 2007)(noting that only permissible responses are those set forth in Rule 36). Defendant's response is clearly not in compliance with Rule 36, and thus, the Court overrules Defendant's objection to Request No. 4 of the First Request for Admissions.

### 2. Defendant's Responses to Request Nos. 6, 10, 11, 12, 14, 15, 16 and 17 of the First Request for Admissions.

Rule 36 of the Federal Rules of Civil Procedure permits a requesting party to file a motion "to determine the sufficiency of an answer or objection." FED. R. CIV. PROC. 36(a)(6). In that regard, Plaintiff asks the Court to deem as admitted for all the Defendant, except the elected Board acting in its legislative function, Request Nos. 6, 10, 11, 12, 14, 15, 16 and 17 of the First Request for Admissions. (Doc. 110, p. 7). Each of the aforementioned requests were directed to Defendant Madison County as a whole.

Defendant responded to these requests by identifying specific departments, offices or units of Madison County. For example, in Request No. 12, Plaintiff sought an admission regarding whether Madison County trained Defendant Chapman with respect to sexual harassment. Defendant responded that the Board of Madison County did not train Defendant Chapman. (Doc. 110, Exh. 1, p. 3). In Request No. 16, Plaintiff sought an admission as to whether Madison County trained Defendant Prenzler in conducting a sexual harassment investigation. Defendant again responded that the Board of Madison County did not train Defendant Prenzler. *Id.* at p. 4.

Plaintiff argues that the above requests were directed to Madison County, but the Defendant limited its answers to the Board or what the Defendant refers to as the legislative branch of Madison County. (Doc. 110, p. 6). Because the Defendant did not qualify or deny any part of the admission, Plaintiff asserts that the above requests were admitted for the entire County. Rule 36 requires that when "a party qualif[ies] an answer or den[ies] only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." FED. R. CIV. PROC. 36(a)(4). The Court, however, has now ruled that the Defendant (acting through the Board) has the responsibility and duty to respond to discovery for all of Madison County, which is the defendant that Plaintiff has sued in this case. Defendant cannot unilaterally limit discovery and/or its responses to the Board or the legislative branch of Madison County, but must also include the executive branch even though that branch consists of independently elected officials. In light of this ruling, it is only fair that the Defendant be given an opportunity to file an amended answer to

these requests (if it so chooses) consistent with the Court's order. Therefore, the Court denies Plaintiff's request to deem the aforementioned requests as admitted for all of Madison County.

### CONCLUSION

In light of the above, the Court hereby **GRANTS** in part and **DENIES** in Part Plaintiff's Motion to Determine Sufficiency of Madison County's Responses to Plaintiff's First and Second Requests for Admissions (Doc. 110). Defendant Madison County shall have **fourteen (14) days** from the date of this Order to produce responses and supplementary responses consistent with this Order.

**IT IS SO ORDERED.**

Dated:  September 4, 2020.

Digitally signed
by Judge Sison 2
Date: 2020.09.04
16:28:14 -05'00'

_____
GILBERT C. SISON
United States Magistrate Judge